IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

RICHEKAD JEAN,

      Petitioner,

      v.

TRACY JOHNS,

      Respondent.

CIVIL ACTION NO.: 5:20-cv-60

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Richekad Jean ("Jean"), who is currently incarcerated at North Lake Correctional Facility in Baldwin, Michigan, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus while he was housed at D. Ray James Correctional Institution in Folkston, Georgia. Doc. 1.  Respondent filed a Motion to Dismiss, Jean filed a Response, and Respondent filed a Reply.  Docs. 11, 14, 15.  For the reasons which follow, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss.  I **DENY** Jean's Motion to Grant Petitioner's "Petition to Grant Petitioner Motion."[1]  Doc. 4.

## BACKGROUND

Jean is currently serving an aggregate 57-month federal sentence imposed by the District Court for the Southern District of Florida based on his convictions for conspiracy to commit wire fraud, wire fraud, receiving, concealing, and retaining monies over $1,000 from the United

---

[1] Jean's "Petition to Grant Petitioner Motion" is actually a motion to seek default, based on the purported untimeliness of Respondent's response to Jean's Petition. Doc. 4. Respondent's response to Jean's § 2241 Petition was originally due July 17, 2020. Dkt. entry date July 16, 2020. However, Respondent moved for an extension of time, which this Court granted, permitting Respondent until July 31, 2020, to file a response. Docs. 9, 10. Respondent's Motion to Dismiss, filed on July 31, 2020, is timely filed. Therefore, the Court **DENIES** Jean's "Petition to Grant Petitioner Motion."

States, and aggravated identity theft, in violation of 18 U.S.C. §§ 1343, 1349, 641, and 1028. Doc. 1 at 1; Doc. 1-11 at 9–10.  He has a projected release date of August 26, 2021, via good conduct release.  Doc. 11-1 at 9.

As a result of disciplinary proceedings based on a Code 203 charge for threatening another with bodily harm, Jean was sanctioned with: the loss of 108 days' good conduct time (27 days' good conduct time and 81 days' non-vested good conduct time); 15 days' disciplinary segregation, and 4 months' loss of phone and commissary privileges.  Doc. 1-4 at 5; Doc. 11-1 at 16.  Jean was also found guilty of a Code 312 violation for insolence toward a staff member and given one-month restrictions on phone and commissary privileges and a Code 307 violation for refusing a staff order and was to change living quarters.  Doc. 1-4 at 5.  Jean asserts the imposition of the sanctions violated his procedural due process rights and the parties involved in imposition of the sanctions lacked the authority to do so.  Jean seeks the expungement of his disciplinary violations and the vacatur of the charges.  Doc. 1 at 6.

## DISCUSSION

In his Petition, Jean asserts his due process rights were violated because he was sanctioned by a partial decision maker and non-BOP employee.  Doc. 1 at 2.  Jean asserts 28 C.F.R. § 500.1(b)(1) defines "staff" as "any employee of the Bureau of Prisons, or Federal Prison Industries Inc[.]" and, although a disciplinary hearing officer ("DHO") at a contract facility such as D. Ray James need not be an employee of the BOP Industries, "the regulations do require that sanctions be imposed by 'bureau Staff.'"  Id.  Jean states DHO Roger Perry, as an employee of a for-profit corporation (The GEO Group) receives dividends based on profits and withholding good conduct time serves a corporate purpose for profits and the DHO's self-interest  Id. at 2. Jean also states the DHO used the incorrect "some evidence" standard of review, as that standard

2

is reserved for courts; rather, DHO Perry should have used the "greater weight of the evidence" standard.  Id.  In addition, Jean alleges he did not receive a copy of the incident report within 24 hours of staff becoming aware of the incident.  Id. at 3.  Further, Jean contends the incident report was re-written, purportedly to change the Code violation charges, even though the report had already gone to the Unit Disciplinary Committee ("UDC").  Id.  Jean avers he is mentally ill and was suffering from a mental defect at the time of the incident at issue, rendering him actually innocent of the charged violations.  Id. at 4.  Jean states he asked to review the videotape of the incident during the DHO hearing, but that request was denied and the DHO failed to review the video as well, which Jean contends was a violation of his due process rights.  Id.

Respondent argues Jean received all the process he was due.  Doc. 11 at 7–8.  In addition, Respondent asserts the DHO's finding of guilt was supported by the greater weight of evidence, and his finding is supported by the "some evidence" standard.  Id. at 8–11.  Respondent also asserts the BOP has the authority to allow contract facilities' employees to conduct disciplinary hearings and impose sanctions.  Id. at 11–12.  Further, Respondent contends Jean's assertion the BOP did not follow its own policy about administrative remedy filings is not a ground for habeas relief.  Id. at 13.

**I.      Whether the DHO was Authorized to Impose Sanctions**

The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(3).  The BOP's authority in this area may include contracting out the care of prisoners to private facilities.  18 U.S.C. § 4013(a)(3).  Additionally, the Regulations governing the BOP's discipline program explain the program applies to inmates assigned to "any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons."

28 C.F.R. § 541.2; BOP Program Statement 5270.09. The inmate discipline program "helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1. "Staff" is defined as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b).[2]

The BOP has no direct or constructive control over managerial functions at D. Ray James Correctional Institution, and the Court notes D. Ray James Correctional Institution is not a "federal" prison. Rather, D. Ray James is a facility operated "under an agreement with the Bureau of Prisons." Therefore, the Court must determine whether staff at D. Ray James Correctional Institution, as a non-federal facility, may nevertheless institute disciplinary proceedings and impose disciplinary sanctions, as delegated by the BOP. The Court finds Respondent has not answered the contention Jean raises.[3]

The BOP's discipline program applies to all federal inmates, including those, like Jean, who are housed by a private corporation with a contract with the BOP. Doc. 11 at 12 (citing 28 C.F.R. § 541 (federal regulations pertaining to inmate discipline), and Program Statement 5720.09 (stating it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment). Respondent relies on Hilario-Paulino v. Pugh, 194 F. App'x 900 (11th Cir. 2006), in support of his assertion the process of the contract DHO recommending the loss of good conduct time and a BOP staff member reviewing the recommendation has been upheld by courts, including this Court. Doc. 11 at 12. However, in Hilario-Paulino v. Pugh, the

---

[2]  In contrast, an "inmate" is defined as "all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities . . . ." 28 C.F.R. § 500.1(c).

[3]  Jean only appears to contest the non-BOP staff member's imposition of sanctions.

4

Eleventh Circuit Court of Appeals deferred to the BOP's interpretation of "redelegate" in § 0.97—that it did not delegate its authority to discipline inmates at contract facilities because it retained the authority to review imposed sanctions—as "neither plainly erroneous nor inconsistent with the regulation . . . ." 194 F. App'x at 904. The Eleventh Circuit found the BOP's interpretation of § 4042(a) was not unreasonable under Chevron, USA, Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842–44 (1984), because the BOP can "delegate a portion of its authority to discipline prisoners in privately run institutions to private actors, though reserving for itself the role of final arbiter." Id. at 903.

While Respondent's interpretation is not unreasonable as to delegation and the disciplinary processes as to contract facilities, his argument in this regard simply does not address Jean's averment that DHO Perry, as non-BOP staff, did not have the authority to impose sanctions against Jean. While DHO Perry referred to the sanctions as being recommendations, doc. 11-1 at 5, other evidence indicates DHO Perry actually imposed these sanctions, id. at 16, and Joy Walters with the BOP's Privatization Management Branch merely certified the sanctions DHO Perry imposed, id. at 19. Again, Respondent does not address the concern a DHO for a privately-owned corporation is not "staff" under the Regulations and cannot, therefore, impose sanctions. See Arredondo-Virula v. Adler, 510 F. App'x 581, 582 (9th Cir. 2013) (noting a private contractor was not authorized to discipline an inmate under the version of 28 C.F.R. § 541.10(b)(1) in place at the time and reversing the district court's judgment dismissing the petition); see also Allen v. Young, Case No. 5:18-cv-01463, 2020 WL 2477939, at *7 (S.D. W.Va. Mar. 2, 2020) (observing § 541.10(b)(1) has been repealed, but "the disallowance of [good conduct time] by a contracted DHO remains problematic . . . . Under the revised

5

regulations, . . . 'it appears that any disciplinary sanction must be imposed by a BOP employee.'") (citation omitted).

Thus, I **RECOMMEND** the Court **DENY** this portion of Respondent's Motion to Dismiss.  However, Respondent's remaining grounds must be addressed.

## II.     Whether Due Process Requirements Were Met

To determine whether Jean's right to due process was violated, the Court must determine what process was owed to Jean.  A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied.  O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact.  Id. (citing Wolff, 418 U.S. at 563–67).  Additionally, the Eleventh Circuit has determined an inmate has the right to attend his disciplinary hearing.  Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).  Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants.  Id.

Jean was charged on April 24, 2019, with encouraging a group demonstration and refusing to obey an order, potentially in violation of Codes 299, 212, and 307.  Doc. 1-2 at 2.  A correctional staff member prepared an incident report, and Jean was given a copy of the incident report two days later.  Id.  Another incident report was prepared on May 15, 2019, based on the same incident, charging Jean with: threatening another with bodily harm, in violation of Code 203; insolence toward staff, in violation of Code 312; and refusing to obey orders, in violation of

6

Code 307. Doc. 1-3 at 2. Jean was provided with a copy of the updated incident report this same date. Id. After the UDC referred the matter, DHO Roger Perry conducted a disciplinary hearing on May 30, 2019. Doc. 1-4 at 2. Jean waived his right to witnesses, did not have any documentary evidence, and waived his opportunity to have staff representation during the hearing. Id. Prior to the hearing, Jean was advised of his rights before the DHO on May 24, 2019.[4] Id. DHO Perry concluded the greater weight of the evidence supported a finding of Jean having committed the prohibited acts as charged. Doc. 11-1 at 15.

The attachments to the parties' pleadings demonstrate Jean received the required due process protections. An incident report was issued on April 24, 2019, and Jean received this incident report two days later. Doc. 1-2. An updated incident report was issued on May 15, 2019, with Jean receiving a copy the same day. Doc. 1-3. Jean was advised of his rights before the DHO and received a copy of the notice of hearing and his rights on May 24, 2019. Doc. 1-4 at 2. He received a DHO hearing on May 30, 2019, and acknowledged his receipt of the incident report at the hearing. Id. at 2–3. Jean attended the hearing, and his rights were again read and reviewed with him. Jean declined to have a staff representative and did not wish to present evidence or witnesses. Id. at 2. Following the hearing, DHO Perry detailed his factual and legal conclusions, and Jean was provided with the DHO's written report. Id. at 3–6. Thus, the well-documented evidence unequivocally demonstrates Jean received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact.

---

[4] The DHO Report form indicates a copy of the advisement of rights form is attached to that form, but a copy of that form was not included in either parties' submissions. Doc. 1-4 at 2; Doc. 11-1. Regardless, the rights form is not material to the Court's resolution of Respondent's Motion to Dismiss, as Jean does not contend he was not advised of his rights.

Jean argues his due process rights were violated because he was not allowed to present or review video evidence at the hearing to show he was not aggressive when he was pulled from his cell. Doc. 1 at 4. Jean states the DHO only looked to still photographs rather than reviewing the video evidence, resulting in a violation of Jean's right to due process. Id.

Prisoners are not entitled to obtain or present video evidence in disciplinary proceedings as a matter of due process. Due process in the context of prison disciplinary proceedings allows for the presentation of documentary evidence, not video evidence.[5] O'Bryant, 637 F.3d at 1213; Sparks v. Laughlin, CV316-090, 2017 WL 988139, at *2–3 (S.D. Ga. Feb. 16, 2017) (finding no due process violation in prison disciplinary hearing where inmate not allowed to review video evidence, despite request, and the Wolff standard was otherwise met), *adopted by* 2017 WL 981389 (S.D. Ga. Mar. 14, 2017). Even if the DHO was required to review and consider all evidence under due process requirements—a concept Jean offers no support for, nor has the

---

[5] It does not appear the Eleventh Circuit has ever held the Due Process clause entitles an inmate to video evidence as "documentary evidence" within the context of prison disciplinary proceedings resulting in the loss of good conduct time. Other Circuits have considered this issue and have found video surveillance evidence may constitute documentary evidence under Wolff, in certain circumstances. Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) ("[P]rison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in Wolff. Like other forms of documentary evidence subject to Wolff's procedural due process protections, an inmate's due process rights related to video surveillance evidence has at least two dimensions: (A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence."); Jones v. Cross, 637 F.3d 841, 847–48 (7th Cir. 2011) (suggesting the existence of a due process right to have video evidence but noting an exception to the disclosure of material, exculpatory evidence that "would unduly threaten institutional concerns[]"); Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007) ("[T]he Bureau's refusal to produce and review a videotape which Mr. Howard asserts would refute charges stemming from Incident No. 945214 violated his due process right to present documentary evidence in his own defense."); but see Crosby v. Fox, 757 F. App'x 673, 678 (10th Cir. 2018) ("Nothing in the Howard decision created a due process right of an inmate to *personally* review videotape evidence used in a disciplinary hearing.") (emphasis in original). However, the current controlling authority in the Eleventh Circuit, particularly O'Bryant, suggests an inmate has no procedural due process right to obtain or present video surveillance evidence in the context of a disciplinary proceeding. O'Bryant, 637 F.3d at 1214–15 (affirming trial court's decision inmate had no procedural due process right to obtain and present video surveillance evidence in the course of disciplinary proceedings).

8

Court found any support for such an argument—the record contradicts any assertion DHO Perry did not review all evidence, including video of the incident. Doc. 1-4 at 4 ("The DHO reviewed CCTV Evidence DVD #0043-19 of this incident in progress.").

Additionally, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).[6] "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. Appx' 752, 757 (11th Cir. 2006) (internal citation omitted).

The DHO's finding that Jean committed the charged offenses of threatening another with bodily harm, insolence toward staff, and refusing to obey orders is supported by "some evidence." Specifically, DHO Perry considered Jean's contradictory statements during the hearing, the incident report and investigation, memoranda from two correctional officers and one

---

[6] The "some evidence" standard is a requirement of procedural, not substantive, due process. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) ("We now hold that revocation of good time does not comport with 'the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record.'") (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (noting in Wolff and Hill "the Supreme Court addressed the requirements of procedural due process in the prison setting.").

captain, Jean's medical report, nine still photographs printed from closed circuit television ("CCTV"), and the chain of custody for the CCTV evidence DVD. Doc. 11-1 at 4–5, 13–16.

The record before the Court reveals Jean received all of the due process protections afforded him during the disciplinary proceedings, and any contention to the contrary is without merit. Thus, the Court should **GRANT** this portion of Respondent's Motion.

### III.     Whether the BOP Failed to Follow its Program Statement and Regulations

Jean appears to argue the BOP violated its own Program Statements because the incident report was amended and his hearing delayed as a result, and the DHO did not employ the "greater weight of the evidence" standard. In addition, Jean implies the BOP violated its own Program Statements and the applicable Regulations by failing to provide him with a copy of the incident report within 24 hours of staff being aware of the incident, the incident report having been re-written, and there was a delay in having the UDC hearing. Doc. 1 at 3. Respondent asserts these contentions do not present grounds for habeas relief. Doc. 11 at 13.

While Jean contends he did not receive a copy of the incident report within 24 hours of staff becoming aware of the incident, doc. 1 at 3, this contention does not constitute a due process violation. Jean did not receive a copy of the original incident report until two days after the incident, yet he received a copy of the amended incident report the same day it was prepared. Docs. 1-2, 1-3. Additionally, § 541.5(a) only states an inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware" of his involvement in an incident. 28 C.F.R. § 541.5(a). This is by no means a requirement, and the lack of receipt within 24 hours is not a due process violation. See Wallace v. Fed. Det. Ctr., 528 F. App'x 160, 162–63 (3d Cir. 2013) (noting, even if § 541.5(a) was violated when petitioner received a copy of the charges two months after the incident, there was no due process violation under Wolff and the delay did not

10

prejudice petitioner); Abbadessa v. Haynes, Civil Action No. CV211-084, 2011 WL 6004330, at *3 (S.D. Ga. July 15, 2011) (noting even if petitioner could show non-receipt of incident report within 24 hours, this would show only a failure to comply a BOP policy but "would not demonstrate a violation of a constitutional right"); see also Burgess v. Taylor, 647 F. App'x 952, 953 (11th Cir. 2016) (upholding district court's finding of no clear error in finding petitioner received all due process protections when he received written notice of charges at least 24 hours before DHO hearing); Jones v. Corizon, No. 2:12-cv-786, 2015 WL 5013954, at *18 (M.D. Ala. Aug. 18, 2015) (stating the circumvention of departmental regulations or policies does not assert a violation of an inmate's constitutional rights (citing Sandin v. Conner, 515 U.S. 472 (1995), and Harris v. Birmingham Bd. of Educ., 817 F.2d 1525 (11th Cir. 1987))); Le v. Augustine, No. 5:12cv377, 2013 WL 2250142, at *7 (N.D. Fla. May 22, 2013) (finding Program Statements are "BOP policies, guidelines or interpretive rules, not substantive law[,]" and violations of these Program Statements are not violations of federal law that can be sustained in a habeas petition).

Additionally, to the extent Jean contends the use of an improper standard support claims for habeas relief, his contentions fail. Bell v. Warden, FCI Tallahassee, Case No. 4:19cv442, 2020 WL 3686850, at *5 (N.D. Fla. June 9, 2020); Le, 2013 WL 2250142, at *7. Moreover, Jean's allegations concerning use of an improper standard is contradicted by the record, including DHO Perry's report and declaration, which demonstrate DHO Perry found Jean committed the charged offenses based on the greater weight of the evidence. Doc. 11-1 at 4, 15. Thus, the Court should **GRANT** this portion of Respondent's Motion.

**IV.     Whether There was Evidence Jean was Mentally Ill**

Jean maintains he is under psychiatric care and suffers from several psychological defects, but neither the investigator nor DHO Perry inquired into whether he was suffering from a mental defect at the time of the incident. Doc. 1 at 4. Respondent counters Jean did not appear mentally ill during the disciplinary process and did not allege he was suffering from a mental illness at the hearing, and the DHO was not required to consult with mental health staff. Doc. 11 at 11.

The relevant Regulation states, "If it appears [an inmate is] mentally ill at any stage of the discipline process, [he] will be examined by mental health staff." 28 C.F.R. § 541.6. In response to Jean's assertions in this regard, DHO Perry declares:

> During the disciplinary process, I did not discover any evidence that indicated inmate Jean did not understand the nature of the disciplinary proceedings[] or that he could not assist in his own defense. Inmate Jean did not appear mentally ill at any stage of the discipline process and never alleged he was mentally ill. Because inmate Jean was competent, I did not consult with mental health staff as contemplated by BOP Program Statement 5270.09[.]

Doc. 11-1 at 4. DHO Perry's uncontroverted declaration "provides strong evidence" Jean did not appear mentally ill during the discipline process and of there being no violation of § 541.6. Pinson v. Berkebile, 576 F. App'x 710, 713–14 (10th Cir. 2014) (finding declaration of hearing officer to be "strong evidence" the petitioner never appeared mentally ill at any stage of the disciplinary process, as he was able to understand the nature of the proceedings, denied having committed the prohibited act, requested and received a staff representative, with whom he conferred during the proceedings, and submitted a witness list and written statement). To be clear, there is no evidence Jean exhibited any evidence of being mentally ill during the disciplinary proceedings and, thus, it was not incumbent upon the DHO to have Jean examined by mental health staff, even if Jean does suffer from psychological defects and is under the care

12

of mental health personnel. In fact, DHO Perry declares there was no evidence Jean did not understand the nature of the proceedings or could not assist in his own defense, nor did Jean exhibit any mental illness or claim he was mentally ill during the disciplinary proceedings. Doc. 11-1 at 4 (citing Program Statement 5270.09, which includes § 541.6).

What is more, Jean has not shown there was any demonstrated evidence relating to his mental state at the time of the incident, rendering him actually innocent of the charged offense. The Court notes Program Statement 5270.09 provides a person can be held "not responsible" for his conduct if, at the time of the conduct, he was unable to "appreciate the nature and quality or the wrongfulness of his[] acts." Program Statement 5270.09, Ch. 3, p. 21. However, such a finding must be based on evidence, including evidence from mental health staff. Id. Even if DHO Perry or another member of this disciplinary staff violated this Program Statement and its attendant Regulation—and there is nothing in the record indicating that any violation occurred—such violations do not amount to a due process violation. Jones, 2015 WL 5013954, at *18; Le, 2013 WL 2250142, at *7. Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Respondent's Motion to Dismiss.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss. I **DENY** Jean's "Petition to Grant Petitioner Motion."

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a

13

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of February, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA